

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
12/06/2007

| | | |
|---|---|---|
| In re: | § | |
| **TBYRD Enterprises, L.L.C.,** | § | **Case No.  06-30078-H1-11** |
|     Debtor. | § | |
| | § | |
| **BFG Investments, L.L.C.** | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | **Adv. Pro. 05-07029** |
| | § | |
| **Texas State Bank,** | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION

For the reasons set forth below, this Court's prior orders imposing sanctions will be modified as follows:

1.    No monetary sanctions will be imposed against John E. Villegas.

2.    Monetary sanctions against Thomas Wayland will be imposed in the amount of $10,000, payable to the Clerk of the Court.

3.    Monetary sanctions against Tim W. Byrd will be imposed in the amount of $5,000, payable to the Clerk of the Court.

### History of Case

TByrd Enterprises, LLC filed a bad faith bankruptcy petition.  The petition was signed by its attorney, Thomas Wayland and by TByrd's owner, Tim Byrd.  The petition was filed at the behest of John Villegas.  On March 13, 2006, this Court issued a lengthy memorandum opinion setting forth the salient facts and law.  Substantial non-monetary and monetary sanctions were imposed against Wayland, Byrd and Villegas.  The sanctions were appealed to the United States District Court.

1

On appeal, the District Court affirmed all of the Court's factual findings. The Honorable Ricardo H. Hinojosa affirmed all of the non-monetary sanctions and reversed the monetary sanctions for further consideration by this Court.

The Court will not repeat the lengthy findings made in the March 13, 2006 opinion. However, certain of the facts and legal conclusions require repetition to assure that the District Court's remand order is faithfully executed:

1.  All of TByrd's property was acquired by TByrd on the morning of the day on which it filed its bankruptcy petition.

2.  TByrd's property was acquired—without Court authority—from the bankruptcy estate of BFG Investments, LLC ("BFG").

3.  The automatic stay in BFG's bankruptcy case had terminated with respect to all of the property acquired by TByrd. Texas State Bank held a lien on the property. The property was scheduled for foreclosure on the same morning that the property was transferred by BFG to TByrd and on the same morning that TByrd filed its bankruptcy petition.

4.  The transfer of property by BFG to TByrd violated Title 18 of the United States Code. The transfer was done for the purpose of hindering and delaying BFG's secured creditor, Texas State Bank.

5.  TByrd obtained all of its funds from a Mexican investor, Mr. Angel Sanchez Torres.

6.  Thomas Wayland purported to serve as TByrd's counsel. In reality, he had discretionary control over Torres' funds and committed the funds to TByrd on behalf of Mr. Torres. Wayland controlled $450,000 of Torres' funds.

7.  Wayland contacted Byrd and arranged to conduct Torres' business through Byrd's corporate shell, TByrd. Wayland and Byrd had a prior attorney-client relationship and remained

friends.  At the time of the bankruptcy filing, Byrd was compensated by Wayland for performing various tasks as requested by Wayland.

8.  Wayland failed to disclose his lack of disinterestedness when he attempted to serve as debtor's counsel.

9.  Byrd, acting at Wayland's direction and with no knowledge of or interest in the business, signed a $1,000,000 promissory note on behalf of TByrd, a deed of trust, and the bankruptcy petition.

10. Villegas was the principal behind BFG.  He orchestrated the transfers out of BFG and insisted that TByrd immediately file a chapter 11 petition upon its acquisition of BFG's properties.

11. The sole purpose of the filing of TByrd's bankruptcy petition was to stop a planned foreclosure sale by Texas State Bank.

12. Each of Wayland, Byrd and Villegas violated federal criminal statutes.

13. Wayland is licensed to practice law in the State of Texas and is admitted to practice before the United States District Court for the Southern District of Texas.

### The Issues on Remand

The remand to this Court requires an examination of several issues:

1.       Did the respondents act in criminal contempt of this Court's orders?  If so, then this Court should certify the criminal contempt matters to the District Court.

2.       Are the monetary sanctions imposed by the Court civil or criminal?

3.       May a Court impose Rule 9011 sanctions for criminal conduct that also violates Rule 9011?

4.       If the monetary sanctions are civil, what is the appropriate amount of sanctions?

3

**1. Criminal Contempt**

An individual will be held in criminal contempt "upon proof beyond a reasonable doubt of 1) a reasonably specific order; 2) violation of the order; and 3) the willful intent to violate the order." *U.S. v. Hassell*, 128 Fed. Appx. 411 (5th Cir. 2005) (citing *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir.), modified in part on other grounds, 116 F.3d 119 (5th Cir.1997)). When the Fifth Circuit found that bankruptcy courts do not have the authority to hold criminal contempt proceedings, it provided extensive instructions on the "characteristics of criminal contempt proceedings generally." *Id.* at 1509. The following excerpt is useful:

> "Criminal contempt is a crime in the ordinary sense" and "in every fundamental respect"; likewise, "convictions for criminal contempt are indistinguishable from ordinary criminal convictions" and "that criminal contempt proceedings are 'criminal in their nature has been constantly affirmed.' " *Id.* 88 S.Ct. at 1481-82 & n. 3. Criminal, unlike civil, contempt requires a willful, contumacious or reckless state of mind. *See United States v. McCargo*, 783 F.2d 507, 510 (5th Cir.1986). *Cf. McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949) (civil). Criminal contempt is denounced by 18 U.S.C. § 401, and may be punished by any term of imprisonment or amount of fine. A defendant charged with that offense enjoys the presumption of innocence, must be proved guilty beyond a reasonable doubt, and cannot be compelled to testify against himself, *Gompers*, 31 S.Ct. at 499, and, at least for contempts not committed in the presence of the court, has the right to counsel. *Bloom*, 88 S.Ct. at 1484. If a sentence to confinement in excess of six months is to be imposed, there is a Sixth Amendment right to trial by jury. *Frank v. United States*, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). Further, a criminal (unlike a civil) contempt prosecution for violation of a court order is " 'a separate and independent proceeding' " from, and " 'is not a part of,' " the case in which the violated order was issued, and does not depend on the validity of that order or the continuation of the underlying proceedings. *Bray v. United States*, 423 U.S. 73, 96 S.Ct. 307, 309-10, 46 L.Ed.2d 215 (1925). *See also Gompers*, 31 S.Ct. at 499-502 ("Proceedings for civil contempt are between the original parties, and are instituted and tried as part of the main case. But ... proceedings ... for criminal contempt are between the public and the defendant, and are not part of the original cause." Id. at 499); *Michaelson v. United States*, 266 U.S. 42, 45 S.Ct. 18, 19, 69 L.Ed. 162 (1924); *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 52 S.Ct. 238, 240, 76 L.Ed. 389 (1932); *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).

4

*In re Hipp,* at 1509-10.

This Court has previously concluded that the parties engaged in criminal *conduct*. The criminal conduct involved the illegal transfer of property out of the BFG bankruptcy estate and the filing of the TByrd petition in violation of § 152(5) of Title 18. As this Court held and the District Court affirmed, the parties "knowingly and fraudulently receive[d]" a "material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11."

Such criminal conduct, however, does not equate to criminal contempt. In this case, none of the Respondents have violated a reasonably specific order of the Court. Accordingly, although there has been criminal conduct, there has been no criminal contempt. This Court has referred the violations of Title 18 to the United States Attorney. The Court makes no certification to the District Court of any criminal contempt matter.

## 2. Classification of the Court's Sanctions

### a. Rule 9011 Sanctions Not Criminal

The District Court's remand order to this Court implicitly requires this Court to determine whether Rule 9011 sanctions are criminal in nature (and thus outside of this Court's limited jurisdiction) or are civil in nature (and thus within this Court's limited jurisdiction). The Court begins with the text of Rule 9011[1]:

> *A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.* Subject to the limitations in subparagraphs (A) and (B), *the sanction may consist of*, or include, directives of a nonmonetary nature, *an order to pay a penalty into court*, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the

---

[1] Although there are some textual differences between Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 9011, none of those differences are present in the portions of the rules that are quoted within this opinion.

reasonable attorneys' fees and other expenses incurred as a direct result of the violation. [emphasis added].

The Respondents' argument that this Court's prior sanction was criminal in nature was based entirely on the Respondents' view that any penalty payable to a Court is necessarily a criminal penalty. As set forth above, the text of Rule 11 provides that one acceptable sanction is a penalty payable to the Court.

A number of Courts have addressed whether the imposition of a Rule 11 sanction is criminal in nature. This Court has reviewed extensive case law and has been unable to locate authority that holds that the imposition of a Rule 11 sanction is criminal in nature or invokes any rights attendant to a criminal matter. Moreover, the Respondents have failed to submit any such authority.

The leading Fifth Circuit case on Rule 11 sanctions is *Thomas v. Capital Sec. Svcs., Inc.,* 836 F.2d 866 (5th Cir. 1988). *Thomas* was intended to provide broad based instruction to Courts within this Circuit:

> As Rule 11 cases begin to emerge in the wake of the 1983 amendments, it is apparent that courts are no longer reluctant to impose sanctions on attorneys and litigants who stray from their obligations under the rule. However, Rule 11 decisions by courts have not always been consistent, producing confusion among the bench and bar, as well as inequitable results. By our opinion today, we seek to ameliorate this confusion and modify existing inequities to the extent possible by clarifying some of the more important issues presented by the application of Rule 11 in this case.

*Id.* at 871.

One of the important teachings of *Thomas* is that a trial judge should use flexibility in determining an appropriate sanction. *Thomas* rejects a former decision by the Fifth Circuit that required findings and conclusions in all Rule 11 cases. Instead, *Thomas* adopted a flexible approach that requires findings and conclusions that are sufficient to create an appellate record

6

and that are commensurate with the seriousness of the Rule 11 issues. "Like a sliding scale, the degree and extent to which a specific explanation must be contained in the record will vary accordingly with the particular circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award." *Id.* at 883.

The Fifth Circuit's flexible approach is wholly inconsistent with the approach required in the context of a criminal proceeding as set forth above in *Hipp*. A number of Circuits have considered—and rejected—the approach suggested by Respondents. Among them are the Ninth (*In re DeVille,* 361 F. 3d 539 (9th Cir. 2003) (holding that a bankruptcy court's imposition of a monetary Rule 11 penalty was not the equivalent of a criminal contempt proceeding); the Tenth (*Eisenberg v. Univ. of New Mexico,* 936 F.2d 1131, 1137 (10th Cir. 1991) (holding that criminal contempt procedures were not applicable under Rule 11 for the imposition of monetary sanctions); and the Eleventh (*Donaldson v. Clark,* 819 F.2d 1551, 1558 (11th Cir. 1987) (same).

Following *Thomas,* the Fifth Circuit has repeatedly been asked to expand the procedural protections afforded under Rule 11—and has consistently refused such expansion. For example, the Fifth Circuit has refused to expand the notice requirements beyond those contained in Rule 11 and found that "due process does not require that notice be given to the offending party in every instance before a court can impose sanctions under Rule 11." *Harmony Drilling v. Kreutter,* 846 F.2d 17, 19 (5th Cir. 1998). Only limited notice and an opportunity to be heard are required before the imposition of Rule 11 sanctions. *Veillon v. Exploration Svcs., Inc.,* 876 F.2d 1197 (5th Cir. 1989). No elaborate or formal hearing is required. *In re Spiller,* 919 F.2d 339, 347 (5th Cir. 1990).

This Court recites the Fifth Circuit's teachings concerning Rule 11 sanctions merely for the purpose of explaining why this Court has concluded that Rule 11 sanctions are civil rather

than criminal in nature.  Although not required by the Fifth Circuit, the Respondents in this case had extensive notice of the sanctions issue, a full opportunity to respond, and an extended evidentiary hearing.  Due process abounded to a much greater extent than required.  The District Court has now affirmed all of the findings made by this Court.

### b. Sanctions Based on Prior Conduct and Payable to the Court are not Per Se Criminal Sanctions.

Wayland, Byrd and Villegas argue that any sanction imposed for past behavior and payable to the Court is, by definition, a criminal sanction.  They rely on a single case for that proposition.  The case is a well reasoned and thoughtful opinion by the United States District Court for the Western District of Texas.  *In re Rodriguez,* No. 05-55166-LMC, 2007 WL 593582 (W.D. Tex. Feb. 20, 2007).  A careful reading of the *Rodriguez* opinion does not support Wayland, Byrd and Villegas' position.  To be sure, *Rodriguez* set aside a sanction that was payable to the clerk and that was issued for past conduct.  *Id.*  However, the sanction was reversed because the Bankruptcy Judge relied on his inherent authority to punish past conduct when the statute provided a specific, alternative mechanism for the relief.  *Id.*  The offending conduct in *Rodriguez* was the violation of an 11 U.S.C. § 110 injunction barring continued violations of the non-attorney petition preparer requirements of the Bankruptcy Code.  Indeed, the Court in *Rodriguez* gives instructions to bankruptcy courts facing the same situation.  *Id.* at *16.  The Court instructed that future sanctions could be imposed and could be payable to the Court.  However, the Court cautioned that the sanctions must be imposed pursuant to § 110 of Title 11 rather than pursuant to the Court's inherent authority.  *Id.* at *17.  The District Court found that the proper remedy for violation of a § 110 injunction was to certify a matter to the District Court for a criminal contempt hearing.  *Id.* at *16-17.  However, the District Court also wrote the following:

As an alternative to certification, the Bankruptcy Court may impose $500 fines on these recidivist contemnors pursuant to section 110(l)(1), which may be trebled pursuant to section 110(l)(2).... The Bankruptcy Court may also use section 110(i) as a vehicle for punishing contempt of its section 110(j) injunctions.

*Id.* at *17.

Accordingly, the *Rodriguez* court approved imposition of a fine by the Bankruptcy Court. The fines approved by the District Court were payable to the United States trustee and made available for enforcement activity by the United States trustee. 11 U.S.C. § 110(l)(4).

This Court notes that in this case, like *Rodriguez,* it appears there are alternatives to the utilization of the Court's inherent authority. To that effect, the Court analyzed each major transgression separately to determine whether an exercise of the Court's inherent authority in this case would be inconsistent with *Rodriguez.* The summary of the Court's conclusions is as follows:

| Conduct | Violates Rule 9011? | Criminally Contemptuous? | Part of Actions that violate Title 18? | Appropriate Use of Inherent Authority –No Other Remedy Available |
|---|---|---|---|---|
| Transfer of Property from BFG estate (all Respondents). | No. | No. | Yes. | No. |
| Filing of Chapter 11 Petition by TBYRD (Wayland and Byrd). | Yes. | No. | Yes. | No. |
| Filing of Chapter 11 Petition by TBYRD (Villegas). | No. | No. | Yes. | No. |
| Orchestration of Chapter 11 Filing by TByrd (Villegas). | No. | No. | Yes. | No. |

As set forth above, all of the Respondents effected the unauthorized transfer of the real estate from BFG to TBYRD. This transfer did not violate any court order. It did not involve the filing of a paper with the Bankruptcy Court or other actions that invoke Rule 9011. For the reasons set forth in the Court's original Memorandum Opinion, the transfer did violate Title 18. Inasmuch as an appropriate remedy exists in the criminal statutes, the Court will not utilize the Court's inherent power to sanction the parties for this conduct.

There is no question that the filing of the chapter 11 petition was done in bad faith in violation of Rule 9011. The reasons why this Court determined the filing to be in bad faith, which were affirmed by the District Court, are patent. This conduct was directly undertaken only by Wayland and Byrd. Although Villegas orchestrated the filing of the bad faith petition, he neither signed the petition nor presented it to the Court. The filing and orchestration of the chapter 11 petition were also part of the conduct that violated Title 18, but the conduct did not violate any Court order. Accordingly, because of the availability of Rule 9011 and title 18, the Court will not utilize the Court's inherent power to sanction the parties for this conduct.

**3. Rule 9011 Sanctions May be Imposed for Criminal Conduct that Also Violates Rule 9011**

Byrd and Wayland violated both Rule 9011 and Title 18. Therefore, the Court must examine whether a Court may impose monetary sanctions for a Rule 9011 violation if that violation was a simultaneous violation of the criminal law? For the reasons set forth below, the Court concludes that a Court may impose Rule 9011 sanctions in such an event.

The Supreme Court addressed whether the imposition of civil sanctions by the Office of Comptroller of Currency precluded a later criminal indictment arising out of the same conduct. *Hudson v. U.S.,* 522 U.S. 93 (1997). The Court concluded that it was appropriate to impose civil sanctions—payable to the government—and to follow the civil sanctions with a criminal

10

prosecution for the same conduct. *Id.* The following excerpts from *Hudson* explain that the imposition of civil sanctions is not inconsistent with a later criminal prosecution:

> [T]he conduct for which OCC sanctions are imposed may also be criminal (and in this case formed the basis for petitioners' indictments). This fact is insufficient to render the money penalties and debarment sanctions criminally punitive, *Ursery, supra*, at 292, 116 S.Ct., at 2149, particularly in the double jeopardy context, see *United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (rejecting "same-conduct" test for double jeopardy purposes). Finally, we recognize that the imposition of both money penalties and debarment sanctions will deter others from emulating petitioners' conduct, a traditional goal of criminal punishment. But the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence "may serve civil as well as criminal goals." *Ursery*, 518 U.S., at 292, 116 S.Ct., at 2149; see also *Bennis v. Michigan*, 516 U.S. 442, 452, 116 S.Ct. 994, 1000, 134 L.Ed.2d 68 (1996) ("[F]orfeiture ... serves a deterrent purpose distinct from any punitive purpose"). For example, the sanctions at issue here, while intended to deter future wrongdoing, also serve to promote the stability of the banking industry. To hold that the mere presence of a deterrent purpose renders such sanctions "criminal" for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation of institutions such as banks.

*Id.* at 105.

With respect to the issue at hand, this Court discerns no distinction between the imposition of civil sanctions by the OCC and the imposition of Rule 9011 sanctions by this Court. In Hudson, the OCC had imposed civil penalties of $100,000 against one individual and $50,000 against the other two. *Id.* at 97. The three plaintiffs in *Hudson* settled the civil penalties with a consent order and actually paid civil penalties to the OCC of $16,500, $15,000 and $12,500 each. *Id.* at 97. They were then criminally prosecuted. *Id.*

The principles in *Hudson* are applicable in a Rule 11 context. The Eighth Circuit applied *Hudson* when it affirmed the disbarment of an attorney following the imposition of Rule 11 sanctions against counsel. *In re Caranchini*, 160 F. 3d 420 (8th Cir. 1998). This Court agrees. The mere fact that an attorney engages in criminal conduct should not lessen this Court's authority to regulate the conduct of counsel appearing before it. Indeed, the *Caranchini* Court

adopted the reasoning utilized by the Pennsylvania Supreme Court in a similar situation, holding

as follows:

> We are persuaded on this issue by the practical reasoning in *Office of the Disciplinary Counsel v. Campbell*, 463 Pa. 472, 345 A.2d 616, 621 (Pa.1975). The Campbell court states that, "[i]f disciplinary actions were viewed, for constitutional purposes, as placing an individual in jeopardy, an attorney who was convicted of a crime could not be disbarred for that crime .... the state would be compelled to have in its midst an uncensured attorney who is a convicted criminal." *Id.*

*Id.* at 424.

At oral argument, the United States trustee agreed that this Court has the authority to

impose civil sanctions under Rule 9011 that are payable to the Court. Wayland and Byrd argue

that civil sanctions payable to the Court under Rule 9011 are necessarily criminal in nature. The

imposition of a monetary sanction, payable to the clerk of the Court, against a member of the bar

for his conduct before the Court, is not a matter of criminal contempt. *U.S. v. Alves,* 136 Fed.

Appx. 616 (5th Cir. 2005) (affirming monetary sanction imposed by District Court for counsel's

failure to appear and finding that the imposed sanction did not amount to a finding of criminal

contempt). Moreover, Wayland and Byrd are unable to reconcile their position with the plain

language of Rule 9011. As set forth above, the Rule provides, in relevant part, as follows:

> *A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.* Subject to the limitations in subparagraphs (A) and (B), *the sanction may consist of*, or include, directives of a nonmonetary nature, *an order to pay a penalty into court*, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

FED. R. BANKR. P. 9011(c)(2) [emphasis added].

The language is plain. Rule 9011 sanctions may be imposed to deter conduct and may be

payable to the Court.

**4. Amount of Sanctions**

Based on the foregoing, the Court concludes that no sanctions will be imposed against Villegas. Villegas did not violate Rule 9011. Therefore, this Court's sole power to sanction Villegas arises from its inherent authority. Because Villegas' conduct also violated federal criminal statutes, pursuant to *Rodriguez,* the Court will not utilize the Court's inherent authority.

The Court finds, however, that Rule 9011 sanctions are appropriate against Byrd and Wayland. The Court further concludes that the Rule 9011 sanctions are civil in nature. The District Court has previously affirmed the non-monetary sanctions. The Court must determine the appropriate monetary sanctions, if any.

At the hearing conducted on September 18, 2007, the Court heard testimony from several witnesses, including Byrd and Wayland. Both Byrd and Wayland expressed regret for their conduct. However, the Court concludes that Byrd's expressions of remorse were insincere. Byrd completely failed to grasp his own wrongdoing. He had apparently decided to express remorse, only because such expressions are expected in a sanctions hearing. He had no comprehension of his own conduct or why it was wrong. Meaningful remorse would require a sufficient amount of inquiry to assure that one did not repeat the wrongful conduct. Inasmuch as Byrd had failed to even attempt to understand why his conduct was being questioned, the Court rejects his expressions of remorse. His future conduct will not be deterred in the absence of a monetary sanction. The Court imposes monetary sanctions against Byrd to assure that he will finally inquire as to why his conduct was wrong. The Court originally imposed a $5,000 sanction against Byrd. Given his financial situation, that is a substantial sanction. It is imposed solely for his conduct that violated Rule 9011. It is necessary for deterrence. No adjustment is appropriate.

13

Wayland also expressed remorse, but his expression was more sincere. The Court is persuaded that Wayland has taken this matter seriously and that he is unlikely to repeat the conduct. Sanctions against Wayland are imposed solely pursuant to Rule 9011. The purpose of sanctions against Wayland is to deter future conduct by attorneys from violations of Rule 9011. The Court previously imposed a $25,000 sanction against Wayland. At the September 18, 2007 hearing, Wayland requested that this Court reduce the sanction against him from $25,000 to $10,000. The Court finds that request reasonable and a *bona fide* acceptance of responsibility, assuming that it is carried to fruition. The Court is aware that a State Bar Disciplinary proceeding has been commenced against Wayland arising out of his conduct in this case. That proceeding along with a $10,000 sanction is sufficient to deter others who are similarly situated.

Separate orders will be issued.

Signed at Houston, Texas, on November 30, 2007.

MARVIN ISGUR
United States Bankruptcy Judge

14